BOWLES, Price Administrator, O. P. A., v. MARS, Inc.

No. 1526.

District Court, W. D. Missouri, W. D.

Feb. 9, 1944.

Amos J. Coffman, of Dallas, Tex., Jerome Walsh, and J. E. Taylor, both of Kansas City, Mo., and George L. Robertson, of Salesbury, Mo., for plaintiff.

Claude R. Miller, of Chicago, Ill., and Leo B. Parker, of Kansas City, Mo., for defendant.

COLLET, District Judge.

The Government through its Office of Price Administration brought this action for treble damages under the Emergency Price Control Act, 50 U.S.C.A.Appendix § 901 et seq., for alleged overcharges made by the defendant Mars Company in the sale of its products. There was a verdict by a jury for the defendant. The Government by the pending motion seeks judgment notwithstanding the verdict or in the alternative, a new trial.

By order of the Administrator, made pursuant to authority given him by the Emergency Price Control Act, the ceiling price at which defendant's products could be sold on July 31, 1942, and thereafter was fixed at the highest price charged for those products sold and delivered during the preceding month of March, 1942. An investigation of defendant's subsequent sales resulted in an injunction suit to compel compliance with that order. That action was in two counts, one to enjoin sales at more than the highest price charged in March, 1942, the other to compel defendant to show on its records and to make a report showing the highest prices charged during March, 1942. In that action the Government proceeded upon the theory that there had been a violation of the order because the defendant had reduced the weight of its product, consisting of various kinds of candy bars, without reducing the price of the bars with the result that the price of the product was increased. It was conceded by all parties that the price per bar remained the same, hence the question from the Government's viewpoint was solely what the lowest weight per bar, box, or carton of defendant's product was in March, 1942, and whether the weight had been decreased after the order became effective. The evidence of the Government consisted of proof of the weights at which defendant shipped its product in cartons. Those weights were taken from the defendant's records and were the weights established by the Western Weighing and Inspection Bureau under contract with de-

fendant and the carriers. They were arrived at by weighing a large number, but only a small per cent, of the total number of cartons of each kind of candy shipped by defendant and then applying the average weight to all shipments of a similar nature. It was conceded that the weight of individual cartons of the same kind of candy varied and that the average was applied to all of a similar kind and freight charges paid on those weights. In that action the defendant vigorously contended that it did not sell its candy by weight and that weight was not a proper criterion for the purpose of determining price. It also contended that the method used by the Western Weighing and Inspection Bureau was not a proper method for determining the weight but that proof of the weight of each and every bar or at least every shipment was necessary in order to establish the true weight, without which no finding of weight could be reached. On appeal to the United States Circuit Court of Appeals, that Court held that the evidence offered by the Government to show the weights in March and thereafter, i. e., by showing the weights established by the Western Weighing and Inspection Bureau by the process of establishing and applying an average, was competent and, in the absence of any other evidence of the product's weight, was sufficient to establish that weight. That being the only evidence offered by either party and that evidence showing that the weight of defendant's product had been intentionally reduced, the Court of Appeals by its mandate ordered defendant to discontinue the sale of less candy by weight for the same price than it had sold and delivered for that price in March, 1942. The Court of Appeals also ordered defendant to make its records show the highest price and, a fortiori, the lowest weight of its product per unit (bar, box or carton) as sold and delivered[1] in March, 1942. In the injunction suit defendant had offered evidence to the effect that it had sold some candy on March 31, 1942, which weighed less than candy manufactured and sold during the remainder of the month and had contended that such weights should be used as the base or ceiling for the purpose of determining subsequent comparative prices. For reasons appearing in the opinion, that evidence was held insufficient by the Court of Appeals to show that such weights could be treated as the base weights.[2] Pursuant to this mandate the defendant set up on its books and filed a ceiling price statement showing the lowest gross weight per carton of its product sold in March, 1942. These weights were the weights therefor found and established by the Western Weighing and Inspection Bureau. In its ostensible compliance with the mandate of the Court of Appeals it did not show the tare or net weights. Nor did it show the price of cartons. The price (domestic) was stated to be .68¢ per box of 24 bars, without regard to weight. It also stated on the ceiling price statement that the weights shown were stated only at the compulsion of the Court of Appeals and were not in fact the true weights. The Court of Appeals had not ordered that any particular weights be set up as the lowest weights.

Prior to the trial of the present cause the Government raised the question of the controlling effect of the decree in the injunction suit on the issues in this case. It was contended by the Government that the method of determining the weight of defendant's product in the manner followed by the Western Weighing and Inspection Bureau was, because it had been approved by the Court of Appeals, the only method that could be used in this action. That contention was overruled and this cause proceeded to trial with the way open to defendant to establish the actual weights of the candy sold during the period covered by this action (from August 1 to December 24, 1942) in any way available to it. The Government offered defendant's ceiling price statement showing the March weights, the Western Weighing and Inspection Bureau weights for the defendant's products sold during the period from August 1 to December 24, taken by a special master from defendant's records, and the weight of the tare, also taken from defendant's records. The base or March weights were treated as being those weights which the defendant had set up in its price ceiling statement in compliance with the mandate in the injunction suit, and defendant was denied the right to show any weights as the base weights except those which it had so shown in compliance with the mandate. Defendant conceded that the weight of the tare during the period from August 1 to

---

[1] The regulation fixed the ceiling price at the highest price charged for products sold *and delivered* in March, 1942.

[2] Brown v. Mars, Inc., 8 Cir., 135 F. 2d 843. (There was a failure to prove delivery at those prices during March).

December 24, as shown by the Government's evidence, was substantially correct. With the repeated assertions of defendant's counsel that a different method would be advanced by defendant for determining the actual weight of the products sold during the period involved, detailed testimony was admitted concerning the variation of the weight of individual cartons, the method of manufacture demonstrating the improbability of exact uniformity in weight of individual bars of candy, the method used by the Western Weighing and Inspection Bureau for determining the average weights used by them and defendant, the fact that the Western Weighing and Inspection Bureau weights were made for shipping purposes only, and other facts tending to show the possibility or probability that the results obtained by the use of the Western Weighing and Inspection Bureau method would be averages and would not represent the exact weight of any unit. Finally, defendant offered the testimony of witnesses to the effect that a more accurate method of determining the exact weight would be to weigh each and every bar, box or carton of candy sold. Defendant did not actually offer any evidence of the weight of candy sold from August 1 to December 24, 1942. The case went to the jury with the only evidence of the gross weight of the products sold from August 1 to December 24, inclusive, the findings of the Special Master, which, as noted, reflected the Western Weighing and Inspection Bureau weights appearing on defendant's records. The Master's findings deducted the weight of the tare (wrappers and packaging material) from the gross weights and thereby reached the net weight of the product. The findings then compared the net weight of the different kinds of candy bars manufactured and sold from August 1 to December 24, 1942, inclusive, with the base weight, viz—the net weight of candy sold and delivered during March, and the former being lower, they were subtracted from the base weights. To the difference the price charged by defendant per unit in weight was applied. The resulting figures represented the overcharge found by the Master during the period in question amounting to approximately $400,000. Several attacks were made upon the accuracy of the use of the Western Weighing and Inspection Bureau figures by the Master. Defendant contended that prior to August 4, 1942, it had received orders for candy to be shipped subsequent to August 4. That it had made up its shipping bills for those shipments prior to August 4 and had placed on them the Western Weighing and Inspection Bureau weights established for candy being manufactured and shipped prior to August 4. That on August 4 it increased the weight of its candy but that the heavier candy was shipped on bills theretofore prepared and to which had been applied the old, and lighter weights. It contended that the Master had, in taking the weights from the defendant's records and shipping bills, necessarily applied the lighter weights to the heavier candy. As the Master's findings separately showed the amount of candy shipped on August 4th and thereafter at the lighter weights, the correction could, if justified, have been made by a simple calculation. That was not done. It was contended that the same thing occurred on two occasions in October. It was further contended that the Master's findings failed to take into account a reduction in the weight of tare consisting of the elimination of an inner paper wrapper for a period of several days between the time when the wrapper was eliminated and the time when new weights were established by the Western Weighing and Inspection Bureau. These alleged discrepancies represented a comparatively small per cent of the total under weight shown by the records and the Master's findings, and, if accepted as such by the jury, could have resulted in only a minor reduction in the amount claimed.

Obviously, the defense consisted (1) in an attack upon the method utilized by the Western Weighing and Inspection Bureau as not being a sufficiently accurate method to justify the acceptance of the results of its use, and (2) the attacks, above noted, and possibly others of a similar nature, upon the accuracy of the Master's findings. The attack made on the accuracy of the Master's computations, if sustained by the evidence, could only have resulted in a reduction and not a total elimination of the under weight otherwise shown and could not have justified the verdict reached. Hence, for present purposes that defense need not be given further consideration. The important question is whether the jury was properly instructed relative to the effect to be given the results of the Western Weighing and Inspection Bureau's method of determining the weight of defendant's product. In that regard the jury was instructed:

"The question as to whether the weights found by the Western Weighing and Inspection Bureau by the method it followed give a result which you should use is sharply disputed between the parties. Whether you do adopt them or not is for you to say. That evidence is competent or it would not have been admitted, and it should not be disregarded by you merely because, if it be a fact, some other method could have been followed. If in your judgment the result of the method followed by the Western Weighing and Inspection Bureau is reasonably accurate and dependable, you will use them, and otherwise you will not."

This instruction clearly left to the jury the determination of the propriety of the Western Weighing and Inspection Bureau method. True, it informed the jury that the results of the use of that method (substantially undisputed) should not be disregarded merely because it might have been possible to weigh each package, yet it still left open to the jury an election to disregard the results if the jury failed to conclude that the method was reasonably accurate and dependable. The Government requested an instruction at the close of all of the evidence to the effect that the jury should accept the method. That request was refused. It should have been given and the instruction, as given, modified accordingly. Admission of evidence to show the degree of accuracy or inaccuracy of the Western Weighing and Inspection Bureau method was justified upon the assumption that figures would be presented later by defendant showing the weight of the same products arrived at by the use of a different method. In ·that event the strength and weaknesses of the two methods would appear and the jury properly left to make a choice between the methods and the weights shown by each method. But when the evidence was all in and the defendant had produced no weights arrived at in any other way, there was no choice of methods or weights open to the jury. If the propriety of the Western Weighing and Inspection Bureau method was a proper question for the jury the instruction, as given, was correct. But the propriety of the method used in reaching a factual result is a question of law for the Court to determine in passing upon the competency of the factual results sought to be shown. In such manner the competency of a confession of guilt is determined, and, if competent, its weight left to the jury. The weights shown by the Government were, with minor exceptions, admittedly the results of that method. The Court of Appeals had held in the injunction suit that the method was a proper manner of showing the weights. The jury should have been instructed in effect that these weights should be accepted as the weight of the products shipped except in so far as these weights may have been applied to products they were not intended to apply to. The failure to so instruct was prejudicial.

■ This is not a case where the truth of the facts sought to be established is directly challenged by the defendant with the result that the jury is at liberty to reject the only testimony offered and return a verdict for defendant. The fact that the figures purporting to be the weights of defendant's product were actually the weights obtained by the Western Weighing and Inspection Bureau from the application of its method was not disputed. The only real dispute was whether the average weights were in some instances applied to products the weights of which had been changed after the averages were established, whether the weights shown took into account the elimination of the inner wrappers during the period that was done before a new average weight was established, whether the weight of wooden boxes was properly found by the Master, and whether plaintiff was entitled to sue for a small portion of the alleged overcharges. If it be conceded that the jury would have found all disputed issues of fact in favor of defendant, plaintiff was still entitled to a verdict under the undisputed evidence. It must follow that the verdict resulted from the jury's determination of the competency of plaintiff's evidence under the instruction given. Hence, the error was one of law by the Court and not one of fact by the jury.

On retrial the evidence may be substantially different, therefore the motion for judgment in plaintiff's favor notwithstanding the verdict is overruled. The motion for new trial is sustained.